```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NORTH DAKOTA
                     NORTHEASTERN DIVISION

Angela Dutil,                    )
                                 )
             Plaintiff,          )
                                 )       Civil No. 2:06-cv-10
     vs.                         )
                                 )
Marvin Lumber and Cedar Co.,     )
d/b/a Marvin Windows and Doors,  )
                                 )
             Defendant.          )
```

**Memorandum Opinion and Order**

The Defendant Marvin Lumber and Cedar Company ("Marvin") moves for summary judgment (doc. #30). The Plaintiff Angela Dutil opposes (doc. #37). The Court concludes genuine issues of material fact exist as to all of Dutil's Title VII and North Dakota Human Rights Act ("NDHRA") claims (Counts I-VI) and **DENIES** summary judgment as to those claims. The Court, however, concludes no genuine issues of material fact exist as to Dutil's negligent supervision and retention claims and **GRANTS** summary judgment as to those claims.

**I. Facts**

Marvin is a Minnesota company that operates a window and door factory in Grafton, North Dakota. Two of its departments there are the Round Tops department and the Casemasters department. On September 13, 2004, Marvin hired Dutil as a seasonal employee in Round Tops. Dutil alleges that when she was hired, Marvin told Dutil seasonal employees generally move to

1

full-time after ninety days of employment.  Marvin disputes this, claiming its policy is to hire seasonal employees to help with the busiest production times, but those seasonal employees are rarely kept on full-time.  Dutil contends Round Tops is a preferred department because it is among the busiest departments and the hourly pay is greater.  According to Dutil, near the time she was hired two men, Trent Bennett and Owen Berg, were hired as full-time employees after being given the option of full-time or seasonal employment.  Dutil was not given the same option.

Dutil claims that shortly after starting in Round Tops, she was subjected to sexual harassment.  For example, on approximately her second day of work, Dutil's supervisor Brent Knoepfle asked Dutil, "How do you get dandruff off of a p----?"  Knoepfle then pretended to brush dandruff off Dutil's shoulder.  Knoepfle instructed Dutil to tell the joke to Bennett, which she did only after first resisting.  Dutil also claims she was subjected to verbal harassment like "dumb c---," "queen b----," "stupid b----," and "f---ing woman," primarily from her coworker Roland Denault.  Denault also commented that women should not be working in Round Tops.  According to Dutil, Denault was instructed to train Dutil.  Bennett and Berg testified in their depositions that although profanity was regularly used, the profanity directed toward Dutil was female oriented.

In late October, Dutil reported the conduct to Marvin's Human Resources Director Dan Gordon.  After meeting with Dutil

2

and investigating the complaint, Gordon learned Dutil's accusations were true.  Gordon warned Dutil's coworkers that this conduct was unacceptable, told Product Group Manager Kirby Unruh to spend more time in Round Tops, and told Dutil to report any continuing harassment to him.  According to Dutil, Gordon and Grafton General Manager Hans Halvorson suggested Dutil transfer out of Round Tops, but Dutil refused because Round Tops was a preferred department.  Dutil contends the harassment stopped for approximately a week but then resumed.  Marvin claims Dutil then agreed to a transfer to Casemasters.  Dutil contends that Gordon forced her to transfer, that she had no choice but to accept, and that she was constructively discharged from Round Tops.

     Shortly after completing training in Casemasters, the Casemasters Product Group Manager Jeff Hermanson and team lead Gerard Perkerewicz expressed concerns over Dutil's performance and gave her a "Performance Improvement Plan."  Dutil contends Marvin had never used this management tool before, but Marvin disputes this.  The concerns included leaving her work station, visiting excessively during work, using her leave too quickly, and seeming tired when arriving for work.  Dutil disagreed with this assessment of her work.

      Dutil wished to become a full-time employee, which under Marvin's policies could happen after working ninety days.  This period expired on December 13, 2004, but Dutil was not made a full-time employee.  On January 3, 2005, Marvin laid off Dutil,

3

and on January 4, Marvin instituted a "hiring freeze" for the slowing winter season. Under this freeze, no new employees would be hired and seasonal employees would be laid off. However, Dutil contends all other seasonal employees were given full-time prior to the hiring freeze, the last being Noemi Villarreal on January 3. Dutil claims she was the only seasonal employee not given full-time employment.

In June 2005, Dutil filed a Charge of Discrimination with the North Dakota Department of Labor. In her charge, she complained of a hostile work environment, being subjected to different terms and conditions of employment than similarly situated males, and retaliation. The Department of Labor issued a right to sue letter in October 2005.

**II. Discussion**

    **A.    Summary Judgment Standard**

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A fact is "material" if it might affect the outcome of a case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u> 477 U.S. 242, 248 (1986). In presenting a motion for summary judgment, the moving party has the initial burden of presenting a prima facie showing of an absence of material facts

through affidavits, documents, or other pleadings on file with the court.  Celotex, 477 U.S. at 322-23.  Such a showing shifts to the non-movant the burden to go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists.  Anderson, 477 U.S. at 256-57.  The non-movant "must show there is sufficient evidence to support a jury verdict in [his] favor."  Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999).  The court views the facts and the inferences to be drawn from the facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

 The Eighth Circuit Court of Appeal has expressed a strong preference against granting summary judgments in employment discrimination cases.  "Summary Judgments should seldom be used in cases alleging employment discrimination."  Johnson v. Minn. Historical Soc'y, 931 F.2d 1239, 1244 (8th Cir. 1991) (citing Haglof v. Nw. Rehabilitation, Inc., 910 F.2d 492, 495 (8th Cir. 1990)).  "Summary judgments should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion."  Johnson, 931 F.3d at 1244.  "All evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the non-moving party."  Id.  "Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not

5

support any reasonable inference for the nonmovant." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994).

**B.   Hostile Work Environment Claims (Counts I and II)**

Dutil claims she was subjected to a sexually hostile work environment under Title VII and the NDHRA. To maintain a claim under both statutes, the plaintiff must prove five elements: (1) she is a member of the protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. Stuart v. Gen. Motors Corp., 217 F.3d 621, 631 (8th Cir. 2000); Opp v. Source One Mgmt., Inc., 1999 ND 52, ¶ 14, 591 N.W.2d 101, 106. The harassment must be both objectively and subjectively offensive. Stuart, 217 F.3d at 631. The plaintiff must also prove that the harassment was so severe or pervasive as to affect a term, condition, or privilege of employment. Opp, at ¶ 18, 591 N.W.2d at 107. When analyzing the fourth element, the court should consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Dutil argues the fifth element should not apply in this case because she was harassed by direct supervisors, employers are

6

vicariously liable for the harassment of their supervisors, and Marvin cannot present an affirmative defense concerning its remedial actions because she was subjected to a tangible employment action.  <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807 (1998).  In this case, however, co-workers, not supervisors, instituted a great majority of the alleged harassment.  <u>Cf.</u> <u>Bradley v. Widnall</u>, 232 F.3d 626, 631 (8th Cir. 2000) (not applying the fifth element because a "majority" of the harassment was from supervisors).  Denault was the main harasser, and although he was instructed to train Dutil, he did not have authority to impact her employment.  Knoepfle's involvement appears to be limited to the joke told early on in Dutil's employment, and that comment is too minimal to support a sexual harassment claim.  Therefore, the Court must analyze this case using the fifth element for non-supervisor.

    Dutil is a member of a protected class and was submitted to unwelcome sexual harassment.  Marvin argues, however, that the harassment was not on the basis of sex but was because she was a new employee.  However, in addition to the joke told shortly after starting, Dutil was harassed with many other profane words.  All of these words were directed toward her as a female.  Neither Bennett nor Berg were subjected to these names or similar harassment.  Therefore, a genuine issue of material fact exists concerning whether the harassment was on the basis of sex.

7

Marvin argues next that the conduct was not sufficiently severe or pervasive to be actionable.  However, Dutil, Bennett, and Berg all testified in their depositions that the harassment was frequent.  The harassment was severe because it attacked her ability as a woman to work in Round Tops.  Comments like "c---" and "stupid b----" are humiliating.  Finally, the harassment affected Dutil's performance because it had a physical impact on her such as losing weight, crying, and vomiting.  Therefore, a genuine issue of material fact exists regarding whether the harassment affected a term or condition of her employment.

Finally, a genuine issue of material fact existed regarding whether Marvin took proper remedial action.  Neither party disputes that Marvin knew of the harassment when it was reported to Gordon.  Marvin argues, however, that Gordon's actions properly resolved the harassment.  This conclusion ignores the fact that the harassment began again shortly after Gordon first addressed it.  Furthermore, Dutil contends she was not voluntarily transferred but was forced into accepting a transfer and was thus constructively discharged.  These allegations create a genuine issue of material fact regarding whether Marvin's remedial actions were proper.  Dutil has presented sufficient evidence for all elements of her hostile work environment claim to create a genuine issue of material fact.

### C.   Disparate Treatment Claims (Counts III and IV)

Dutil claims she was treated unequally because she is a woman.  In her response to Marvin's Motion for Summary Judgment, Dutil argues she was discriminated against when Marvin initially hired her in Round Tops because she was not given a choice of full-time employment.  Marvin argues, however, that this claim was not presented in Dutil's Charge of Discrimination and was not pled in her Complaint.

One claim Dutil included in her Charge of Discrimination was that she "was subjected to different terms, conditions or privileges of employment than individuals not in [her] protected category."  She did not elaborate on the statement any more concerning her initial hire.  In her complaint, Dutil indicates that she was hired as a seasonal employee and that Marvin subjected her to disparate and unequal treatment.  Rule 8 of the Fed. R. Civ. P. defines a liberal pleading standard, requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief."  While Dutil's Complaint and Charge of Discrimination hinge on the definition of the phrase "liberal pleading standard," the Court gives Dutil the benefit of the doubt, noting she has presented evidence that she was treated differently than similarly situated male employees.  Thus, the Court will analyze Dutil's disparate treatment claim in the context of her initial hire.

Courts apply the McDonell Douglas burden shifting test to disparate treatment claims that have only circumstantial evidence of discrimination. Hesse v. Avis Rent A Car System, Inc., 394 F.3d 624, 631 (8th Cir. 2005). The plaintiff must first produce evidence of four elements: (1) she is a member of a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated differently from similarly situated males. Id. The burden of production then shifts to the defendant to present a legitimate nondiscriminatory reason for the adverse employment action to rebut the plaintiff's presumption of discrimination. Id. The burden then shifts back to the plaintiff to show that the defendant's proffered reason is pretext for discrimination.

Neither party disputes the first element. Furthermore, Dutil has provided evidence of the second element. She had to be qualified to preform her job because she was hired. Dutil has shown the third element because she was subjected to the adverse action of being hired for only seasonal work and not full-time employment. Finally, she has shown evidence that similarly situated males were treated differently. Bennett and Berg, each hired near Dutil's hire, were hired full-time.

In her response to Marvin's motion, Dutil argued Marvin had no legitimate nondiscriminatory reason, so she did not need to show pretext. In its reply, however, Marvin states it had concerns about hiring Dutil because she had received some

negative recommendations, so seasonal employment was more appropriate to decide whether Dutil should be offered full-time employment. Although Dutil has not specified what could be considered pretext, the record contains sufficient evidence to create a genuine issue of material fact on this issue. After she was hired seasonally, Dutil was the only woman in Round Tops. Denault stated women should not be allowed to work in Round Tops. After Dutil left Round Tops, Denault prided himself on getting her out. Dutil has met her burden to show pretext.

    **D.    Retaliation Claims (Counts V and VI)**

Dutil claims Marvin retaliated against her for engaging in protected activity. When only circumstantial evidence of retaliation exists, as is the case here, the Eighth Circuit Court of Appeals applies the McDonnell Douglas test. Stuart, 217 F.3d at 634. The plaintiff must present evidence of three elements: "(1) she opposed a practice made unlawful by the statute, (2) her employer subsequently took adverse action against her, and (3) the adverse action was causally linked to the protected activity." Id. Recently, the Supreme Court clarified the definition of an adverse employment action as any action that a reasonable employee would consider materially adverse. Burlington N. and Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006). The Court defined materially adverse as any action that might dissuade a reasonable employee from making or supporting a charge of discrimination. Id. (citing Rochon v.

11

Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). To show a causal connection, the temporal proximity between the protected activity and adverse action is relevant but cannot be the only evidence of retaliation. Stuart, 217 F.3d at 635.

Neither party disputes that Dutil engaged in protected activity. She complained of harassment to Gordon. Furthermore, Dutil suffered an adverse employment action. She was laid off rather than kept on as a full-time employee. Marvin argues, however, that the two were not causally connected. However, Dutil's protected activity and her layoff occurred just over two months apart from each other. Furthermore, as Dutil notes, it followed a transfer she contends she was forced to accept and was after she was given a Performance Improvement Plan. Prior to her complaints against her coworkers, she had received no negative feedback about her performance. Therefore, Dutil has met her burden.

Marvin presents a legitimate, nondiscriminatory reason for the termination. It implemented a hiring freeze imposed after the busy season. However, Dutil presents evidence of pretext. She was the only seasonal employee not retained prior to the hiring freeze. This fact is suspect enough to create a genuine issue of material fact regarding Dutil's retaliation claims.

### E.  Negligent Supervision and Retention Claim (Count VII)

Finally, Dutil claims Marvin negligently supervised and retained several employees in violation of North Dakota tort law.

Because both causes of action find their root in negligence, Dutil must establish duty, breach, causation, and damages. Nelson v. Gillette, 1997 ND 205, ¶ 40, 571 N.W.2d 332, 340. To establish a claim for negligent supervision, a plaintiff must show an employer failed to exercise ordinary care in supervising its employees so as to prevent the foreseeable misconduct of an employee from causing harm to other employees. Id. at ¶ 39, 571 N.W.2d at 340. To establish a claim for negligent retention, a plaintiff must show an employer failed to exercise ordinary care when it retained an employee after the employer knew or should have known that the employee was causing harm to another employee or a client. See id. at ¶ 37, 571 N.W.2d at 340 (noting a concession of negligent hiring and retention claims when no evidence of prior misconduct existed); Schlenk v. Nw. Bell Tel. Co., Inc., 329 N.W.2d 605, 614 (N.D. 1983) (discussing the elements of negligent selection of a contractor).

Dutil has failed to present evidence that Marvin was negligent in supervising or retaining its employees. After Dutil notified Gordon of the harassment, he warned the employees this behavior was unacceptable and instructed Unruh to more closely supervise Round Tops. Unruh testified he watched Round Tops more closely. Dutil's only rebuttal to this is that she never saw him watching Round Tops. Thus, her claim is that because she did not see an increased management presence in Round Tops, management was not supervising Round Tops. This is insufficient to create a

genuine issue of material fact. Furthermore, Dutil has presented no evidence or legal authority that Marvin was required to terminate the alleged harassers. While she has established a genuine issue of material fact regarding whether Marvin took proper actions to remedy the hostile work environment, she has not shown how Marvin did not exercise ordinary care when it decided not to terminate the other employees. Therefore, the negligence claims in Count VII must be dismissed.

### III. Conclusion

The Court **DENIES** summary judgment as to Dutil's hostile work environment, disparate treatment, and retaliation claims. The Court **GRANTS** summary judgment as to her negligent supervision and retention claims.

**IT IS SO ORDERED.**

Dated this 3rd day of May, 2007.

*/s/ Rodney S. Webb*
RODNEY S. WEBB, District Judge
United States District Court